UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
1S REO OPPORTUNITY 1, LLC,

                Plaintiff,

     - against -

223 HOWARD LLC,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
24-CV-2877 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On April 17, 2024, Plaintiff 1S REO Opportunity 1, LLC filed its Complaint, pursuant to New York Real Property Actions and Proceedings Law ("RPAPL"), Section 1301 *et seq.*, seeking to foreclose a commercial mortgage against Defendant 223 Howard LLC. (*See* Compl., Dkt. 1, ¶¶ 1, 7.) Currently before the Court is Plaintiff's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Pl.'s Mot. for Summ. J. ("Mot." or "Motion"), Dkt. 23.) Plaintiff alleges that it has met its *prima facie* case for foreclosure and that Defendant's Answer with its affirmative defenses should be stricken. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Mot. Mem."), Dkt. 23-1, at 4–6.) Defendant claims that it has presented valid defenses and that material and factual disputes remain such that summary judgment is inappropriate at this time. (Def.'s Mem. in Opp'n to Mot. for Summ. J. ("Opp'n"), Dkt. 24, at 1, 4.) The Court concludes that Plaintiff has met its burden of proof and that Defendants have failed to advance evidence that creates a genuine dispute of material fact. For the reasons explained below, Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

**BACKGROUND**

**I.     Factual Background**[1]

    **A.     The Property and the Mortgage**

On August 26, 2021, Defendant obtained a loan from Quanta Finance, LLC ("Quanta") in the amount of $3,525,000 (the "Loan"). (*See* Pl.'s Statement, Dkt. 23-2, ¶ 2; Mortgage, Dkt. 235, at ECF[2] 4–7 (the "Loan Agreement").) The same day, Defendant executed and delivered a Consolidated Promissory Note (the "Note") to Quanta in that amount, (Pl.'s Statement, Dkt. 23-2, ¶ 2; *see* Consolidated Promissory Note and Allonge ("Note and Allonge"), Dkt. 23-4), and executed and delivered to Quanta a Consolidation, Extension and Modification of Mortgage Agreement (the "Mortgage") to secure the sum of $3,525,000 plus interest, which was recorded in the Kings County Clerk's Office on November 10, 2021, and which encumbers the premises known as 223 Howard Avenue, Brooklyn, NY, 11233 (the "Property"), (Pl.'s Statement,

---

[1] Unless otherwise noted, the following facts are taken from Plaintiff's Statement pursuant to Rule 56.1 of the Local Rules of the Eastern District of New York, ("Pl.'s Statement"), (Dkt. 23-2), and are undisputed. *See* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the [Local Civ. R. 56.1] statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."). The facts recited herein are also supported by admissible evidence. *See Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[The Court] must be satisfied that the citation to evidence in the record supports the assertion." (citation omitted)); *see also Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 269 (E.D.N.Y. 2023) (noting that parties must proffer factual statements "supported by admissible evidence"). As permitted by Rule 56(e) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1746, the Court relies in part upon sworn affidavits setting forth admissible facts based on personal knowledge and unsworn, written declarations "subscribed . . . as true under penalty of perjury, and dated." *See* Fed. R. Civ. P. 56(e); 28 U.S.C. § 1746. Where the facts are in dispute, the admissible evidence is construed in the light most favorable to the non-moving party. *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011) (quotation omitted).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

2

Dkt. 23-2, ¶ 3; *see* Mortgage, Dkt. 23-5, at ECF 15–44).  On January 2, 2024, the Mortgage was assigned by an Assignment of Mortgage from Quanta to Plaintiff, which was recorded on January 11, 2024, in CRFN 2024000009873 in the Kings County Clerk's Office.  (Pl.'s Statement, Dkt. 23-2, ¶ 4; *see* Assignment, Dkt. 23-6.)  The Note was also transferred from the original lender, Quanta, to Plaintiff by an Allonge firmly affixed to the Note.  (Pl.'s Statement, Dkt. 23-2, ¶ 5; *see* Note and Allonge, Dkt. 23-4.)

### B. The Contested Default

It is undisputed that no payment has been made on the Mortgage since June 1, 2022, and that Defendant has thus defaulted.  (*See* Pl.'s Statement, Dkt. 23-2, ¶ 6 ("[Defendant] defaulted under the contractual provisions of the Loan by failing to pay the June 1, 2022 payment, and the default continues to date.").)  Although the parties dispute whether Defendant received notice of the default, Defendant concedes that notice was not required by law as the loan is a commercial one.[3]  (Counterstatement, Dkt. 26, ¶ 8.)  Defendant also does not dispute that it has not cured the default since June 2022, (*see id.* ¶¶ 6, 9), but argues that "the alleged default was caused by Plaintiff's predecessor, Quanta," (*id.* ¶ 6).

## II. Procedural History

On April 17, 2024, Plaintiff filed the Complaint.  (Compl., Dkt. 1; *see* Pl.'s Statement, Dkt. 23-2, ¶ 10.)  On the date the Complaint was filed, "Plaintiff was in physical possession and

---

[3] Additionally, notice of default is not a requirement under the Mortgage. (Note and Allonge, Dkt. 23-4, at ECF 3 ("All parties to this Note, whether Maker, principal, surety, guarantor or endorser, hereby waive presentment for payment, demand, protest, notice of protest, notice of dishonor and all other notices in connection with this Note.")); *see also Wilmington Tr., Nat'l Ass'n v. Lott Ave. Owner, LLC*, No. 22-CV-2437 (FB) (CLK), 2024 WL 1973363, at *3 (E.D.N.Y. May 3, 2024) ("[F]or a commercial loan, where 'the mortgages and notes did not obligate the plaintiff to provide the defendant with any notice of default,' the notice defense fails." (quoting *Emigrant Funding Corp. v. Agard*, 995 N.Y.S.2d 154, 156 (2d Dep't 2014)).

3

was the owner and holder of the original Note and Mortgage." (*Id.* ¶ 11.) On June 18, 2024, Defendant filed its Answer and nine affirmative defenses. (*See* Answer, Dkt. 9.) After pretrial motions practice and discovery, (*see* 7/25/2024 Min. Entry; 10/29/2024 Dkt. Order), Plaintiff requested a pre-motion conference ahead of its planned motion for summary judgment, (Dkt. 14). The Court denied the request as unnecessary, (12/27/2024 Dkt. Order), and set a briefing schedule for Plaintiff's Motion, (1/6/2025 Dkt. Order). Plaintiff served its Motion on February 14, 2025, (Dkt. 18); Defendant served its response on April 3, 2025, (Dkt. 20); and Plaintiff served its reply on June 6, 2025, (Resp., Dkt. 25), at which point the Motion was fully briefed. In Plaintiff's Motion, Plaintiff also moves to strike Defendant's affirmative defenses in Defendant's Answer. (Mot. Mem., Dkt. 23-1, at 1.)

## LEGAL STANDARD

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant carries the burden of demonstrating the absence of any disputed issues of material fact. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "If the movant does this successfully the burden shifts, requiring the opposing party to 'offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Gustavia Home, LLC v. Rice*, No. 16-CV-2353 (BMC), 2016 WL 6683473, at *1 (E.D.N.Y. Nov. 14, 2016) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

Specifically, the non-moving party "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Jaramillo v. Weyerhaeuser Co.*, 536

4

F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The evidence must be such that "jury could reasonably find for [the nonmovant];" "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient." *Anderson*, 477 U.S. at 252. The non-movant cannot rely on the allegations in their pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citations omitted); *see also D'Amico*, 132 F.3d at 149 ("The non-moving party may not rely on mere conclusory allegations nor speculation." (collecting cases)). In assessing whether summary judgment is appropriate based on the submitted evidence, the court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 272 (E.D.N.Y. 2023) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

## DISCUSSION

### I. Motion for Summary Judgment

Under New York law, "[t]o foreclose on a mortgage, a plaintiff must demonstrate (1) the existence of a mortgage; (2) ownership of the mortgage; and (3) the defendant's default in payment on the loan [secured by the mortgage]." *Freedom Mortg. Corp. v. Abass*, No. 22-CV-5577 (CBA) (JRC), 2025 WL 875421, at *6 (E.D.N.Y. Mar. 3, 2025), *R&R adopted*, No. 22-CV-5577, 2025 WL 871661 (E.D.N.Y. Mar. 20, 2025) (citation omitted); *see also Avail 1*, 680 F. Supp. 3d

5

at 274 ("Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the Court along with proof that the mortgagor has failed to make payments due under the note." (quoting *Builders Bank v. Warburton River View Condo LLC*, No. 09-CV-5484 (VB), 2011 WL 6370064, at *2 (S.D.N.Y. Dec. 20, 2011))); *Gustavia Home, LLC v. Hoyer*, No. 16-CV-4015 (PKC) (VMS), 2025 WL 2802085, at *3 (E.D.N.Y. Sep. 30, 2025) ("In a foreclosure action, under New York law, a plaintiff establishes its prima facie entitlement to summary judgment by producing evidence of the mortgage, the note, and the defendant's default." (quoting *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019) (summary order))). "Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its *prima facie* entitlement to judgment of foreclosure." *Green Mountain Holdings (Cayman) Ltd. v. La Hacienda Bufeis LLC*, No. 21-CV-0574 (ENV), 2023 WL 11804095, at *4 (E.D.N.Y. Mar. 6, 2023) (collecting cases), *R&R adopted in part, rejected in part*[4], No. 21-CV-0574 (ENV) (CLP), 2024 WL 1926076 (E.D.N.Y. May 2, 2024).

Here, Plaintiff has established its *prima facie* case for foreclosure. In moving for summary judgment on the foreclosure, Plaintiff has proven (1) the existence of the Mortgage and Note with Allonge, (Mortgage, Dkt. 23-5; Note and Allonge, Dkt. 23-4); (2) Plaintiff's ownership over the Mortgage, (Assignment, Dkt. 23-6; *see* Aff. in Supp. of Mot., Dkt. 23-3, ¶¶ 8–9; Pl.'s Statement, Dkt. 23-2, ¶¶ 5, 11); and (3) Defendant's default on the Mortgage, (*see* Statement of Account, Dkt. 23-7; Demand Ltr., Dk. 23-8). Notably, Defendant appears to concede Plaintiff's *prima facie* foreclosure case: according to Defendant, "there is no issue of material fact" as to Plaintiff's right

---

[4] The Court notes that the Honorable Eric N. Vitaliano found that the *Green Mountain Holdings* plaintiffs had "successfully established defendants' liability" but declined to grant foreclosure "because the [c]ourt [was] unable to verify the principal balance and interest owed to plaintiff." *Green Mountain Holdings*, 2023 WL 11804095, at *4. Such deficiencies are not present here.

6

to foreclose under the Mortgage.  (*See* Opp'n., Dkt. 24, at 1; *see also id.* at 9 ("The question presented in this Motion is not whether Plaintiff has the *right* to foreclose, but instead whether [foreclosure] is fair and equitable.").)

Thus, Plaintiff's proffered evidence, uncontested by Defendant, establishes Plaintiff's entitlement to summary judgment unless Defendant can "set forth 'concrete particulars' showing that a trial is needed."  See *M&T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 552 (E.D.N.Y. 2010) (quoting *Cousin v. White Castle System, Inc.*, No. 06-CV-6335 (JMA), 2009 WL 1955555, at *4 (E.D.N.Y. July 6, 2009)); *see Great Normandy LLC v. 4 Queens Homes Inc.*, No. 22-CV-1624 (RPK) (CLP), 2023 WL 11845610, at *4 (E.D.N.Y. Feb. 28, 2023) ("Once the plaintiff submits the mortgage, the unpaid note, and evidence of the default, it has satisfied its *prima facie* entitlement to judgment, and the burden shifts to the defendant to demonstrate that there is a triable issue of fact with respect to the merits of the defenses and/or counterclaims." (citations omitted)).

## II. Affirmative Defenses

### A. Waived Affirmative Defenses

Defendant argues that there remains a "justiciable controversy" since it "has raised genuine issues of material fact in its affirmative defenses and rebuttal testimony."  (Opp'n, Dkt. 24, at 2.)  Plaintiff moves to strike Defendant's affirmative defenses because, "[a]s a matter of law, none of these claims have legal merit."  (Mot. Mem., Dkt. 23-1, at 6.)  Defendant's Opposition consists solely of affirmative defenses, though it only raises five of Defendant's original nine affirmative defenses.[5]  (*Compare* Opp'n, Dkt. 24, *with* Answer, Dkt. 9.)  The other four original affirmative

---

[5] Defendant's Opposition does not mention Plaintiff's motion to strike, only Plaintiff's motion for summary judgment.  (*See* Opp'n, Dkt. 24.)  However, since the Opposition focuses on Defendant's (remaining) affirmative defenses, the Court construes the Opposition as addressing both of Plaintiff's motions.

7

defenses—(1) failure to state a claim, (Answer, Dkt. 9, ¶ 6); (2) lack of standing, (*id.* ¶ 7); (3) ineffective service, (*id.* ¶ 8); (4) and that the claims are barred by "accord and satisfaction," (*id.* ¶ 10)—are therefore considered waived. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally . . . a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others."); *Golden Bridge LLC v. 150-30 Ave Realty LLC*, No. 23-CV-9045 (NCM) (PK), 2025 WL 1548859, at *5 (E.D.N.Y. May 30, 2025) ("Having failed to present arguments in opposition to plaintiff's motion for summary judgment, defendants' affirmative defenses are waived." (citations omitted)); *Windward Bora, LLC v. Regalado*, 751 F. Supp. 3d 122, 131–32 (E.D.N.Y. 2024) (striking affirmative defenses not included in defendant's opposition to plaintiff's cross-motion for summary judgment and motion to strike affirmative defenses).

### B. Defendant's Remaining Affirmative Defenses

"An affirmative defense is a defense that will defeat the plaintiff's claim, even if all allegations in the complaint are true, rather than an attack on the truth of the allegations, or a rebuttal of a necessary element of the claim." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 7 F.4th 50, 63 (2d Cir. 2021) (citation and alterations omitted). Defendant bears the burden of proof in establishing the legal sufficiency of an affirmative defense. *Regalado*, 751 F. Supp. 3d at 131 (quoting *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)); *G4S Int'l Emp. Servs. (Jersey), Ltd. v. Newton-Sealey*, 975 F.3d 182, 187 (2d Cir. 2020) ("It is well-established that a defendant . . . bears the burden of proving its affirmative defense." (citation omitted)).

Defendant's sole evidence in support of its remaining affirmative defenses is an affidavit by Steven Schwartz ("Schwartz") ("the Schwartz Affidavit"), who is an adviser to Defendant, and accompanying exhibits. (*See* Aff. in Opp'n to Mot. ("Schwartz Aff."), Dkt. 24-1.) "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on

8

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Court finds that none of Defendant's remaining affirmative defenses are sufficiently established to avoid summary judgment for Plaintiff.

      1.    <u>Unclean Hands, Bad Faith, and Unfair Lending Practices—Affirmative Defenses Four, Six, and Seven</u>

Defendant argues that third party Quanta "*actually caused this Loan to go into default* by refusing to pay the property tax so [Defendant] could sell the condo units [in the building that Defendant built on the Property]."[6] (Opp'n, Dkt. 24, at 11 (emphasis in original); Schwartz Aff., Dkt. 24-1, ¶ 13.) According to Defendant, Quanta, and by association Plaintiff, have "unclean hands" because they acted in "bad faith" and "'deceptively' in a material way by first agreeing to pay the property taxes on the Property so [Defendant] could sell the condominium units and pay off the Loan, and then by pulling a 'bait and switch' under false pretenses, forcing [Defendant] into default, and causing [Defendant] damages in the form of lost sales on the condo units and increased costs." (*See* Opp'n, Dkt. 24, at 2, 5.) In essence, Defendant argues that the cause of the default constitutes a genuine issue of material fact and that, if Defendant's version of the default is true, Quanta, and by extension Plaintiff, are estopped from acting on the default due to the unclean hands doctrine and other equitable principles. (*See id.* at 4.)

Under New York law, "[t]he doctrine of unclean hands applies when the complaining party shows that the offending party is guilty of immoral, unconscionable conduct and even then only

---

[6] By November 2022, and subsequent to the default, Defendant owed $45,000 in property taxes to the City of New York and $20,000 in unpaid bills to contractors. (Schwartz Aff., Dkt. 24-1, at ECF 12.) Defendant told Quanta that Defendant needed to clear both balances in order to obtain the Certificate of Occupancy ("C of O"), which it was required to have in order to start selling units and gain the income necessary to pay its Loan obligations. (*See id.*)

9

when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct." *Genger v. Genger*, 76 F. Supp. 3d 488, 502 (S.D.N.Y. 2015), *aff'd*, 663 F. App'x 44 (2d Cir. 2016) (quoting *Kopsidas v. Krokos,* 742 N.Y.S.2d 342, 344 (2002)). "The defendant who invokes the doctrine of unclean hands has the burden of proof." *Freedom Calls Found. v. Bukstel*, No. 05-CV-5460 (SJ) (VVP), 2006 WL 845509, at *23 (E.D.N.Y. Mar. 3, 2006) (citation omitted).

Defendant bases its estoppel arguments on the alleged oral agreement between Defendant and Quanta's Managing Director, Jeff Malach ("Malach"). (*See* Opp'n, Dkt. 24, at 5 ("[I]n a telephone conversation with Mr. Schwartz, Quanta's managing director, Jeff Malach, agreed to pay the Property's taxes so [Defendant] could obtain the [C of O] from the City and sell the three condo units." (citation omitted)).) But Defendant fails to provide any corroborating evidence of this alleged oral agreement. Indeed, the only corroborating evidence Defendant provides is an excerpt from an email chain between Schwartz and Malach in which Schwartz makes the request for property taxes, but with Malach's response seemingly excised. (Schwartz Aff., Dkt. 24-1, at ECF 11–14 (describing situation at the Property and requesting that Malach "Please let [Schwartz] know asap, [Malach's] decision here.").) Plaintiff disputes Defendant's version of events and highlights that "it acquired the loan well after the alleged discussions," (Resp., Dkt. 25, at 7)—a loan whose written provisions lack any mention of the alleged agreement upon which Defendant rests so many of its affirmative defenses.

"It is well established that a disputed, uncorroborated affidavit standing alone is insufficient as a matter of law to raise an issue of material fact" and therefore meet the requisite burden of proof. *Cap. One Nat. Ass'n v. 48-52 Franklin, LLC*, No. 12-CV-3366 (LGS), 2014 WL 1386609, at *6 (S.D.N.Y. Apr. 8, 2014) (quoting *Union Bank of Switz. v. 890 Park Assocs.*, No. 92-CV-1557

10

(JFK), 1995 WL 121289, at *5 (S.D.N.Y. Mar. 20, 1995)); *N.Y. State Urban Dev. Corp. v. Garvey Brownstone Houses*, 469 N.Y.S.2d 789, 795 (2d Dep't 1983) (holding that a plaintiff was not estopped from foreclosing on the mortgage at issue because in response to contradicting written agreements, defendants offered only an unsupported affidavit alleging an oral promise after the contract had been made without any other evidence establishing the existence of an agreement). "[A] bare assertion that certain representatives of the mortgagee made [an oral promise to forgo or delay foreclosure] is not enough to create an issue of fact." *Union Bank of Switz.*, 1995 WL 121289, at *5 (quoting *N.Y. State Urban Dev. Corp.*, 469 N.Y.S.2d at 795)).

This alleged oral agreement notwithstanding, it is unclear exactly why Quanta would bear any responsibility—let alone be "guilty of immoral, unconscionable conduct," *Genger*, 76 F. Supp. 3d at 502 (citation omitted)—for Defendant's *default* on the Mortgage. Defendant defaulted on the Mortgage by June 2022. (*See* Def.'s Counterstatement, Dkt. 26, ¶¶ 6, 9.) Any alleged negotiations with Quanta—and any alleged assent by Quanta—happened in November 2022, which is a full five months *after* the default. (Schwartz Aff., Dkt. 24-1, ¶ 17.) By then, Defendant also owed property taxes that were Defendant's obligation under the Mortgage.[7] (*See* Mortgage, Dkt. 23-5, at ECF 20; *see* discussion *infra*.) Defendant accuses Quanta of fraudulent conduct, (*see, e.g.*, Opp'n, Dkt. 24, at 11), but has failed to plead any material misrepresentations or otherwise "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Defendant also accuses Quanta of "coercive, exploitive, overreaching, and unconscionable conduct" for refusing to help Defendant out of default, (*see* Opp'n, Dkt. 24, at 12–13), but "difficult choices do not constitute duress," *Westbrooke v. Bellevue Hosp. Ctr.*, No. 16-CV-9845 (RA), 2018

---

[7] Defendant has not contested the validity of the underlying Mortgage nor any of its provisions.

11

WL 4189514, at *5 (S.D.N.Y. Aug. 31, 2018) (citation omitted). *See also Cavelli v. N.Y.C. Dist. Council of Carpenters*, 816 F. Supp. 2d 153, 162 (E.D.N.Y. 2011) ("It is well settled that '[a] mere threat to do that which one has the legal right to do does not constitute duress.'" (quoting *Lyons v. Lyons*, 734 N.Y.S.2d 734 (3d Dep't 2001))). Defendant clearly faced difficult financial decisions after the COVID-19 pandemic[8]; what is not clear is why Defendant believes that Quanta bore any responsibility for these decisions, and why Quanta's failure to pay the property taxes that Defendant legally owed would constitute unclean hands, bad faith, or unfair lending practices, such that Defendant should be saved from the consequences of its financial failures.

The Court has equal difficulty understanding why Defendant believes that *Plaintiff* can or should be held legally responsible under the same equitable doctrines. Defendant concedes that "all [of its] contact was with Quanta . . . as the original 'Lender' in this case and not with Plaintiff." (Opp'n, Dkt. 24, at 5). While Plaintiff, as Mortgage assignee, "takes [the mortgage] subject to any defenses existing in favor of the mortgagor that existed against the . . . assignor," *Rice*, 2016 WL 6683473, at *3 (citing *Hammelburger v. Foursome Inn Corp.*, 431 N.E.2d 278, 282 (N.Y. 1981))[9], the Court has already found Defendant's alleged defenses lacking. *See* discussion

---

[8] Though Defendant argues in its Opposition that the "under-performing Loan was essentially caused by a *force majeure* event (a global pandemic) that was outside of [Defendant's] control," (Opp'n, Dkt. 24, at 8), this doctrine was not alleged as an affirmative defense in Defendant's Answer and is thus waived.

[9] The Court notes that, in arguing the opposite proposition, Plaintiff cited to *Gustavia Home, LLC v. Rice*, 2020 WL 4917915 (E.D.N.Y. Aug. 21, 2020), which does not exist. (*See* Resp., Dkt. 25, at 2, 7.) "2020 WL 4917915" is the Westlaw citation for *Durrett v. IKO Indus., Inc.*, No. 2019-CA-1307-MR, 2020 WL 4917915 (Ky. Ct. App. Aug. 21, 2020). Plaintiff appears to have been citing *Gustavia Home, LLC v. Rice*, No. 16-CV-2353 (BMC), 2016 WL 6683473 (E.D.N.Y. Nov. 14, 2016), which states the exact opposite proposition for which Plaintiff cites it. *Compare* (Resp., Dkt. 25, at 7 ("Allegations concerning the conduct of a prior lender are legally irrelevant to Plaintiff's enforcement rights. *See Gustavia Home, LLC v. Rice*, 2020 WL 4917915, at *5 (E.D.N.Y. Aug. 21, 2020).")), *with Rice*, 2016 WL 6683473, at *3 ("[I]t has long been the

12

of allegations against Quanta, *supra*.  Insofar as Defendant accuses Plaintiff of bad faith for Plaintiff's refusal to "settle this case," (*see, e.g.*, Opp'n, Dkt. 24, at 5), "the [implied contractual] obligation of good faith and fair dealing does not obligate a party to do more than what was expressly promised under the contract," *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 300 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 50 (2d Cir. 2010) (citing *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995)).  Here, the Mortgage contains no express promise or requirement to reach a settlement.  "The fact that . . . [Plaintiffs] have not acquiesced in [Defendant's] requests to resolve its dispute . . . in the fashion that [Defendant] desires, does not equate to a breach of the implied covenant of good faith and fair dealing." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F. Supp. 3d 704, 725 (S.D.N.Y. 2014).  Though Defendant claims that Plaintiff agreed "to work out a settlement in this case," (Opp'n, Dkt. 24, at 7), that "agreement" appears nowhere in the record submitted.

Finally, even if Quanta had orally agreed to modify the terms of the Mortgage by paying the property taxes, any "alleged oral modification of [a] note and mortgage" would be inadmissible in court—and therefore insufficient to establish an issue of material fact—given New York's parol evidence rule.[10]  *Solomon v. Burden*, 961 N.Y.S.2d 535, 535 (2d Dep't 2013) (collecting cases); *see Can-Am Dev. Corp. v. Meldor Dev. Corp.*, 625 N.Y.S.2d 600, 601 (2d Dep't 1995) ("Evidence of the alleged oral promises to extend the maturity date of the loan agreements by the plaintiffs'

---

law of New York that the assignee of a mortgage takes subject to any defenses existing in favor of the mortgagor that existed against the mortgagee/assignor.").

[10] Although "a contractual prohibition against oral modification may itself be waived when there is partial or complete performance, in accordance with the oral modification," *Modelo, S.A. de C.V. v. USPA Accessories LLC*, No. 07-CV-7998 (HB), 2008 WL 3919186, at *2 (S.D.N.Y. Aug. 25, 2008) (citation and internal quotation marks omitted), Defendant has made clear in its pleadings that Quanta never followed through with any alleged oral agreement to pay the taxes, (*see* Opp'n, Dkt. 24, at 10).

13

predecessors-in-interest is barred by the parol evidence rule."); *see also Cap. One Nat'l Ass'n*, 2014 WL 1386609, at *6 ("[A]ny attempt to orally modify [an agreement that prohibits oral modifications] would not be legally effective under New York law." (citing N.Y. Gen. Oblig. Law § 15–301(1))). Here, the Mortgage provides that Defendant would "pay . . . all taxes of every kind . . . including real and personal property taxes . . . imposed upon or assessed against it or the Premises," (Mortgage, Dkt. 23-5, at ECF 20–21), and further that "[n]one of the terms and provisions of this Mortgage or of the other loan documents may be changed, waived, discharged or terminated or may any material departure from the provisions hereof or thereof be consented to, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge, termination or consent is sought," (*id.* at ECF 41). "Where, as here, the oral promises are directly contradicted by the unambiguous terms of the parties' mortgage documents which precluded any oral modification, the writing controls." *Can-Am Dev. Corp.*, 625 N.Y.S.2d at 601 (citing *Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279 (N.Y. 1977)).

\* \* \*

Thus, the Court finds that Defendant has failed to raise a genuine dispute of material fact in its Fourth, Sixth, and Seventh Affirmative Defenses, and these fail to defeat Plaintiff's *prima facia* foreclosure case.

### 2. Failure to Name Necessary Parties and Impact of Third Parties—Eighth and Ninth Affirmative Defenses

As to its Eighth and Ninth Affirmative defenses, Defendant argues that Plaintiff "fail[ed] to name indispensable parties[11]" and that these and other third parties have interests that take

---

[11] Though "necessary" and "indispensable" no longer appear in the text of Rule 19, they are still commonly used as shorthand to refer to parties described by Rules 19(a) and 19(b), respectively. 7 Wright & Miller's Federal Practice and Procedure § 1604 (3d ed. 2025). The Court therefore considers Defendant's Ninth Affirmative Defense under the standard for Rule 19 parties.

14

priority over that of Plaintiff. (Opp'n, Dkt. 24, at 2; *see* Answer, Dkt. 9, ¶ 14 ("Plaintiffs' damages, if any, were caused by other persons over whom Answering Defendant has no and had no control, all of whom claim to have an interest in the subject property and priority over Plaintiff's claims as set forth in the Complaint.").) Defendant alleges that the Property "is in a delicate situation with competing interests including a contractor that has not been paid and other lenders such as Gilbert Timsit and Frank Banitha who will seek to intervene if this matter is not settled." (Opp'n, Dkt. 24, at 9.) According to Defendant, Timsit made a loan to Defendant concerning the Property (the "Timsit Loan") on June 1, 2021, which was prior in time to Plaintiff's loan. (Schwartz Aff., Dkt. 24-1, ¶ 59.) In February 2024, Defendant allegedly "entered into a Confession of Judgement [sic] for the Timsit Loan." (*Id.* ¶ 60.) Separately, Defendant claims the "on-line Uniform Commercial Code ('UCC') filings indicate that another lender Peyom LHR Scoopsa ('Peyom') had a UCC Financing Statement on file as of February 20, 2018, three years before Quanta issued the original Loan on this Property." (*Id.* ¶ 61.) Finally, Defendant states that it "was just made aware that [Banitha], who had previously sued [Defendant] on this Property in New York State Supreme Court (Index No. 527121/2021) has now filed a lawsuit on November 6, 2024, in the District Court in Tel Aviv, Isreal [sic] claiming an interest in this Property as a lender to [Defendant] in the amount of $542,842." (*Id.* ¶ 63.) Thus, Defendant argues that "there are disputed facts as to [Quanta's and Plaintiff's] knowledge of competing lenders (Peyom and Timsit) that require the Court to deny the instant Motion." (Opp'n, Dkt. 24, at 9.)

> Under Rule 19,
>
> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an

15

existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(1). Because the underlying interests here sound in real property, the Court's analysis is guided by Real Property Actions and Proceedings Law ("RPAPL") § 1311. *See CIT Bank, N.A. v. Locastro*, No. 17-CV-1701 (AMD) (JO), 2018 WL 4026737, at *2 (E.D.N.Y. Aug. 22, 2018) (applying RPAPL § 1311 and Rule 19 together to determine whether a missing party must be joined). Under RPAPL § 1311, a necessary party is "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311(3). A "subordinate" lien refers to any lien recorded after the primary lien. *See Plenitude Cap. LLC v. Utica Ventures, LLC*, 592 F. Supp. 3d 82, 86 (E.D.N.Y. 2021) (collecting cases). The absence of a necessary party under RPAPL § 1311 does not automatically defeat a foreclosure action; it "simply leaves [the necessary] party's rights unaffected by the judgment of foreclosure and sale."[12] *Polish Nat. All. of Brooklyn, U.S.A. v. White Eagle Hall Co.*, 470 N.Y.S.2d 642, 648 (2d Dep't 1983) (citations omitted). Under New York law, a lien which is not recorded at all is simply "void as against any lien on the same real property that is recorded in good faith." *United States v. Turk*, 626 F.3d 743, 748 (2d Cir. 2010) (citing RPAPL § 291).

Despite Defendant's conclusory statements as to the intent and interests of the "competing parties" whom Defendant identifies as "indispensable," (Opp'n, Dkt. 24, at 2, 8; Schwartz Aff.,

---

[12] If properly recorded, a subordinate lien would simply not be extinguished by a foreclosure action in which the subordinate lienholder was not joined. *See 1077 Madison St., LLC v. New York State Dep't of Tax'n & Fin.*, No. 19-CV-0954 (NGG) (CLP), 2022 WL 2658456, at *3 (E.D.N.Y. July 8, 2022) (detailing steps required to foreclose on subordinate lienholders omitted from original foreclosure (quoting *6820 Ridge Realty LLC v. Goldman*, 701 N.Y.S.2d 69 (2d Dep't 1999)).

Dkt. 24-1, ¶¶ 58–64), Defendant has not met its burden of proof to show that these parties must be joined under RPAPL § 1311 before summary judgment in favor of foreclosure can be granted. Defendant has provided documentation of neither the June 2021 Timsit Loan, (*see* Schwartz Aff., Dkt. 24-1, ¶ 59), nor the February 2024 Confession of Judgment, (*see id.* ¶ 60), to the Court, and neither appears to have been recorded. If Timsit's Confession of Judgment is unrecorded, it is "void as against" Plaintiff's recorded Mortgage, *see Turk*, 626 F.3d at 748 (citing RPAPL § 291). Regarding Banitha's alleged interest, the instant case precedes any recent case filed by Banitha in Israel, (*see* Schwartz Aff., Dkt. 24-1, ¶¶ 63–64 (describing the lawsuit as having been filed "on November 6, 2024")); the state court case preceding the instant case was dismissed; and the associated Notice of Pendency was dismissed by June 2025 (after Plaintiff intervened in the case and filed a motion to dismiss it), (Order, Dkt. 25-2, at 3). Finally, regarding Peyom's alleged interest, Defendant provides a UCC financing statement dated February 20, 2018, that is unrecorded and unsigned, (*see* Schwartz Aff., Dkt. 24-1, at ECF 26–27), and fails to create or perfect an interest in real property, *see* N.Y. U.C.C. Law § 9-109(d) ("[Article 9 of the UCC] does not apply to: . . . (11) "the creation or transfer of an interest in or lien on real property[13] . . . ."). Defendant provides no proof regarding any of the other alleged third-party interests. The "complete failure of proof concerning an essential element of [Defendant's affirmative defense] necessarily renders all other facts immaterial." *Giammettei*, 34 F.3d at 54–55 (quoting *Celotex*, 477 U.S. at 323); *see also Avail 1*, 680 F. Supp. 3d at 272–733 ("Where a plaintiff uses a summary

---

[13] While Article 9 of the UCC covers "the collateral assignment of a secured note, including a mortgage note," *Provident Bank v. Cmty. Home Mortg. Corp.*, 498 F. Supp. 2d 558, 571 (E.D.N.Y. 2007) (citation omitted), the collateral at issue in the UCC financing statement provided by Defendant is the Property itself, and the UCC financing statement is therefore "an interest in or lien on real property" to which the UCC's Article 9 is "inapplicabl[e]." N.Y. U.C.C. Law § 9-109(d)(11).

17

judgment motion, in part, to challenge the legal sufficiency of an affirmative defense[,] . . . a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." (citing *Giammettei*, 34 F.3d at 54)).

\* \* \*

Thus, the Court does not find that any of Defendant's alleged creditors or "competing interests" qualify as Rule 19 parties such that foreclosure of the Mortgage would be inappropriate.

### III. Motion to Strike Answer and Affirmative Defenses

Plaintiff also moves to strike Defendant's Answer and affirmative defenses. (Mot. Mem., Dkt. 23-1, at 1.) Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike affirmative defenses under Rule 12(f) are disfavored, and the standard for a plaintiff to prevail is demanding." *Anhui Konka Green Lighting Co. v. Green Logic LED Elec. Supply, Inc.*, 625 F. Supp. 3d 269, 288–89 (S.D.N.Y. 2022) (citation omitted). Because the Court finds that Defendant's affirmative defenses fail to rebut Plaintiff's *prima facie* foreclosure case, it finds the request to strike unnecessary and declines to analyze whether Plaintiff has met the "demanding" standard for striking each of the remaining affirmative defenses, and denies Plaintiff's motion as moot.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is granted, and its Motion to Strike Defendant's Answer and affirmative defenses is denied as moot. Plaintiff is directed to submit a proposed judgment of foreclosure providing for a sale of the Property consistent with this Memorandum & Order within thirty (30) days of this Memorandum & Order. The proposed judgment of foreclosure should provide for the appointment of a proposed referee to effectuate the sale and to disperse funds from such a sale. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 3, 2026
       Brooklyn, New York